[Cite as *Sumner v. Roofing Co.*, 2025-Ohio-3006.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| KATRINA SUMNER | : | |
| | : | C.A. No. 30441 |
| Appellant | : | |
| | : | Trial Court Case No. 2024 CV 06007 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| ROOFING COMPANY | : | Court) |
| | : | |
| Appellees | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 22, 2025, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with the opinion.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MARY K. HUFFMAN, JUDGE

TUCKER, J. and HANSEMAN, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30441


ANDREW M. ENGEL, Attorney for Appellant
JAY R. LANGENBAHN, Attorney for Appellee


HUFFMAN, J.

{¶ 1} Plaintiff-Appellant Katrina Sumner appeals from the trial court's order dismissing her claims under the Ohio Consumer Sales Practices Act (CSPA) against Defendant-Appellee Daniel Mann, president of operations and co-owner of Defendant The Roofing Company (TRC). Because we conclude that the allegations in Sumner's amended complaint were sufficient to state a claim against Mann under the CSPA, we reverse the trial court's order and remand this matter to the trial court for further proceedings.

## I.     Background Facts and Procedural History

{¶ 2} In August 2024, Sumner contacted TRC regarding replacement of the roof over her screened porch. Mann, who was president of operations and co-owner of TRC, responded to Sumner's inquiry and visited her property to perform an inspection and prepare an estimate. The estimate, totaling $2,350, proposed removal of the existing metal roof, installation of proper underlayment, resetting of the existing metal panels with correct flashing, installation of an ice and water shield, removal and replacement of fascia, and installation of transition strips. Sumner accepted the proposal, and TRC completed the work.

{¶ 3} Shortly after the work was performed, Sumner observed several issues with the workmanship and became concerned that TRC had lacked the requisite knowledge and experience regarding the materials and construction required to perform the roofing services as promised. According to Sumner, TRC had done the following: damaged shingles on the main roof; cut panels that should not have been cut; tried to piece panels together to create

a drip edge instead of using an actual drip edge; bent and broken panels; removed existing roof decking and replaced it with plywood; failed to increase the roof pitch to properly redirect precipitation; failed to properly lay shingles; and failed to add proper flashing, among other issues. She alleged that TRC's actions had resulted in water leakage by the front door that had not previously existed and substantial damage to the shingles and metal panels. For those reasons, Sumner contacted TRC regarding her concerns, and Mann returned to the property to evaluate the issues. He allegedly agreed to redo certain work for no charge. In the weeks that followed, however, Mann did not show up and offered excuses to delay remediation efforts. Mann then told Sumner that he had determined that TRC had done nothing wrong, but he still agreed to redo the drip edge for her. Thereafter, Mann allegedly disappeared, ignored Sumner, and failed to repair the drip edge as promised.

{¶ 4} In November 2024, Sumner filed her initial complaint, which asserted claims against TRC for breach of contract, negligence, and violations of the CSPA. In January 2025, she amended her complaint to add Mann as an individual defendant. The amended complaint asserted claims against "all defendants," including Mann as a "supplier," for violations of the CSPA due to failure to perform in a workmanlike manner, a pattern of inefficiency and incompetence, failure to provide required receipts, and misrepresentation.

{¶ 5} The allegations in Sumner's amended complaint did not differ significantly from those in her initial complaint. In her first CSPA claim for failure to perform in a workmanlike manner, she alleged that the defendants, including Mann, had violated the CSPA by: failing to complete the work in a workmanlike manner; failing to remedy the substandard work; breaching their duty by creating defects in the property that had to be remedied by other professionals; and committing unfair or deceptive practices by failing to perform in a workmanlike manner and then failing to correct the substandard work. In her second CSPA

claim for a pattern of inefficiency and incompetence, she claimed that the defendants had incompetently performed the contracted-for repairs, failed to complete the work in a professional manner, which resulted in substandard work and extensive remediation, and never remedied the substandard work. In her third CSPA claim based on failure to provide required receipts, she alleged that the defendants had accepted payment but failed to provide the required receipt. Finally, in her CSPA claim based on misrepresentation, she alleged that the defendants had made numerous statements and representations that were, in fact, false.

{¶ 6} In response to Sumner's amended complaint, Mann filed a Civ.R. 12(B)(6) motion to dismiss, arguing that the amended complaint failed to state a claim against him. Mann contended that there were no additional allegations in the amended complaint sufficient to state a claim because the subject contract was between Sumner and TRC and Sumner's claims related to roof work performed by TRC, not Mann.

{¶ 7} The trial court agreed with Mann, granting his motion to dismiss the amended complaint in its entirety (rather than simply dismissing Mann as a party in his individual capacity). In its decision, the court analyzed the allegations in each of Sumner's claims. It found that there was no allegation that Mann had performed the work on the roof, and thus Sumner could prove no set of facts in support of her CSPA claim for failure to perform in a workmanlike manner against Mann individually. The court also concluded that there were no allegations that Mann, individually, had engaged in a pattern of inefficiency and incompetence by failing to competently perform the contracted-for repairs, failing to complete the work in a professional workmanlike manner, failing to provide required receipts in violation of the CSPA, or knowingly making false representations to Sumner. The trial court included Civ.R. 54 certification on its order, and the case proceeded in the trial court

against TRC.

{¶ 8} Sumner appealed from the trial court's order dismissing her amended complaint and, in effect, dismissing Mann as a party in his individual capacity.

## II.     Assignment of Error

{¶ 9} In her sole assignment of error, Sumner contends that the trial court erred in dismissing her claims for violations of the CSPA against Mann. She asserts that Mann, as president of operations and co-owner of TRC, personally interacted with her, inspected the property, and provided the estimate, which inextricably linked his actions and representations to those of TRC and resulted in personal liability for any violations of the CSPA due to his conduct.

{¶ 10} Sumner further argues that Ohio law permits individual liability when a corporate officer participates in or directs CSPA violations. According to Sumner, the standard for individual liability requires personal involvement, not physical performance. She contends that Mann directly participated in the transaction at issue and that the trial court erred by dismissing her claims against him at the pleading stage. She argues that she alleged sufficient facts to support individual liability for violations of the CSPA in each of her four claims against Mann.

### *Standard of Review*

{¶ 11} Civ.R. 12(B)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. Pursuant to Civ.R. 12(B)(6), a motion to dismiss should only be sustained if it appears beyond doubt that a plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 145 (1991). A motion to dismiss is procedural and tests the sufficiency of the complaint, not the merits of the suit. *See State ex rel. Hanson v. Guernsey Cty. Bd. of*

*Commrs.*, 65 Ohio St.3d 545, 548 (1992).

{¶ 12} When a trial court considers a motion to dismiss for failure to state a claim, all factual allegations must be taken as true and all reasonable inferences must be drawn in favor of the non-moving party. *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192 (1988); *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 76 Ohio St.3d 521, 524 (1997). For a Civ.R. 12(B)(6) motion to be sustained, the trial court must also determine that no amendment to the pleading could cure the defect. *State ex rel. Hanson* at 548. In other words, to dismiss a complaint on Civ.R. 12(B)(6) grounds, "it must appear beyond doubt that the plaintiff can prove no set of facts . . . that would entitle the plaintiff to the relief sought." *Ohio Bur. of Workers' Comp. v. McKinley*, 2011-Ohio-4432, ¶ 12. "A court cannot dismiss a complaint under Civ.R. 12(B)(6) merely because it doubts the plaintiff will prevail." *Leichtman v. WLW Jacor Communications, Inc.*, 92 Ohio App.3d 232, 234 (1st Dist. 1994).

{¶ 13} On appeal, "[a]n order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review." *Duer v. Henderson*, 2009-Ohio-6815, ¶ 68 (2d Dist.). Under this review, we independently examine the complaint to determine whether the dismissal was appropriate. *Boyd v. Archdiocese of Cincinnati*, 2015-Ohio-1394, ¶ 13 (2d Dist.). In conducting the review, we must assume that the facts as pleaded are true, "but the same does not apply to conclusions of law that the pleader contends are proved by those facts." *Thomas v. Progressive Cas. Ins. Co.*, Inc., 2011-Ohio-6712, ¶ 8 (2d Dist.).

*Ohio Consumer Sales Practices Act*

{¶ 14} The CSPA aims to protect consumers from unfair, deceptive, or unconscionable sales practices used by businesses. Among other things, the CSPA requires sellers, or "suppliers," to accurately represent the characteristics of a product or service, honor guarantees and warranties, make no misrepresentations about the nature of

their products or services, and not mislead consumers. *See generally* R.C. 1345.02. Under the CSPA, "supplier" means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer. R.C. 1345.01(C).

{¶ 15} With respect to the CSPA, "Ohio law has long held that corporate officers may be held personally liable for actions of the company if the officers take part in the commission of the act or if they specifically directed the particular act to be done, or participated or cooperated therein." *State ex rel. Fisher v. Am. Courts, Inc.,* 96 Ohio App.3d 297, 300 (8th Dist. 1994), citing *Young v. Featherstone Motors, Inc.*, 97 Ohio App. 158, 171 (2d Dist. 1954); *see also Siemon v. Combs*, 1994 WL 237483, *2 (2d Dist. June 3, 1994) ("a corporate officer is individually liable for his acts which violate the Consumer Sales Practices Act"); *Burns v. Spitzer Mgt.,* 2010-Ohio-5369, ¶ 32 (8th Dist.) ("Where officers or shareholders of a company take part in or direct the actions of others that constitute a violation of the CSPA, that person may be held individually liable.").

{¶ 16} "In order to hold a corporate officer personally liable for his actions in violation of the Consumer Sales Practices Act, the evidence must show the officer took part in the commission of the act, specifically directed the particular act to be done, or participated or cooperated therein." *Grayson v. Cadillac Builders, Inc.*, 1995 WL 546916, *3 (8th Dist. Sept. 14, 1995), citing *State ex rel. Fisher*; *see also Garber v. STS Concrete Co.*, 2013-Ohio-2700, ¶ 28 (8th Dist.), citing *Stultz v. Artistic Pools, Inc.,* 2001-Ohio-1420, ¶ 4 (9th Dist.) (an officer of a corporation is individually liable for each violation of the CSPA in which he personally participates); *Inserra v. J.E.M. Bldg. Corp.*, 2000 WL 1729480, *5 (9th Dist. Nov. 22, 2000), citing *Sovel v. Richardson*, 1995 WL 678558 (9th Dist. Nov. 15, 1995) (the officer's "liability flows not from his status as . . . an officer . . ., but from his personal actions in violating

CSPA.").

{¶ 17} If a corporation committed a deceptive sales act because of the individual representations made by the corporation's president, the president may also be personally liable. *See Gayer v. Ohio Business Trading Assn.*, 1988 WL 87629, *2 (8th Dist. July 7, 1988). However, a corporate officer will not be held personally liable for the acts of the corporation by mere virtue of his status as a corporate officer. *Featherstone Motors* at 171; *Davila v. Calo*, 1985 WL 4615 (8th Dist. Dec. 19, 1985). A complaint against a corporate officer must allege facts or circumstances resulting in potential corporate liability and departure from the common-law rule against corporate-officer liability for the corporation's acts in order to survive a Civ.R. 12(B)(6) motion to dismiss. *See Davila*; *see also Grayson* at *3, fn.1 (the CSPA "does not change the existing common law of tort, nor does it change the common law rule with respect to piercing the corporate veil. A corporate officer may not be held liable merely by virtue of his status as a corporate officer. It does, however, create a tort which imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities.").

{¶ 18} In furtherance of this precedent, we specifically explained in *Luckoski v. Allstate Ins. Co.*, 2013-Ohio-5460, ¶ 36 (2d Dist.), that a supplier who personally took part in the commission of or cooperated and directly engaged in violations of the CSPA when contracting with consumers could be held liable for damages that resulted from his violations. Under those circumstances, the supplier's liability is not based on his status as a shareholder but on his direct actions in violating the CSPA. *Id.; see also Inserra* * 5; *Garber* at ¶ 27 ("In certain contexts, . . . individuals can be held to answer for the actions of the company. Violations of the CSPA offer such a context. Where officers or shareholders of a company take part in or direct the actions of others that constitute a violation of the CSPA,

that person may be held individually liable."); *Mohme v. Deaton,* 2006-Ohio-7042, ¶ 18 (12th Dist.) ("the OSCPA does create a tort that imposes personal liability upon corporate officers for violations of the act performed by them in their personal capacities.").

{¶ 19} In the case before us, we note that Sumner's appellate counsel conceded during oral argument that she had not stated a CSPA claim against Mann for failure to provide required receipts.   Thus, we will only address her other three CSPA claims.

{¶ 20} According to the allegations in Sumner's amended complaint, Mann visited her property, conducted an inspection, prepared the estimate with a description of the work to be performed, and later responded to Sumner's quality complaints. He also examined the workmanship, offered to remediate deficiencies at no cost, and eventually disappeared without providing the promised repairs. We agree with Sumner that these allegations suggest more than passive oversight by Mann, as Mann allegedly set forth the scope of services in the estimate, failed to fulfill promises for remediation, and abandoned the project. Although Mann contends that he could not have failed to perform in a workmanlike manner because there was no allegation that he performed any work at all, Mann was not required to actually participate in the construction work to be liable under the CSPA. As previously explained, a corporate officer like Mann can be held personally liable for violations of the CSPA if he actively participated in or directed the actions that led to the violation.

{¶ 21} A review of Sumner's claims against Mann demonstrates that, although her allegations were not particularly expansive, she did, in fact, allege that Mann had acted in an individual capacity and had been directly involved with the alleged prohibited acts under the CSPA. These allegations did not indicate the validity of Sumner's claims against Mann, nor did they relate to her probability of recovery. But they did sufficiently state claims against Mann for violations of the CSPA. The claims against Mann should not have been dismissed

pursuant to Civ.R. 12(6)(B).   Accordingly, Sumner's assignment of error is sustained.

### III.     Conclusion

{¶ 22} For the foregoing reasons, the judgment of the trial court is reversed. This matter is remanded with respect to Sumner's CSPA claims against Mann arising from alleged failure to perform in a workmanlike manner, a pattern of inefficiency and incompetence, and misrepresentation.

. . . . . . . . . . . . .

TUCKER, J. and HANSEMAN, J., concur.